UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APOLLO PETROLEUM SOLUTIONS,
LLC, and CLIFTON ROE,

          Plaintiffs,                        CIV. NO. 16-12158

         v.                            HON. TERRENCE G. BERG

FLOWBACK SOLUTIONZ CANADA,

          Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION (DKT. 6)**

This case arises from a dispute about the rightful possession of a "gaseous infusion machine."  This machine, allegedly invented by Plaintiff Clifton Roe, is used in the oil and gas industry to dissolve gasses into liquids.  Roe is currently an employee of Plaintiff Apollo Petroleum Solutions, LLC, but over the past few years he has also been associated with two other companies, Nano Gas Technologies, Inc. ("Nano Gas") and OilTrap Environmental Products, Inc. ("OilTrap").  According to the Complaint, Defendant Flowback Solutionz Canada ("Flowback-Canada or Defendant") has Plaintiff's proto-type machine in its possession.  Plaintiff wants the machine back.

Defendant filed a motion to dismiss for lack of personal jurisdiction (Dkt. 6). Plaintiff filed a response brief (Dkt. 8) and Defendant filed a reply (Dkt. 11).  The Court heard oral argument on Defendant's motion on November 2, 2016.  Upon

review of the entire record and the legal arguments of the parties, the Court finds

that Plaintiffs have not established that Defendant has had contacts with Michigan

sufficient to subject Defendant to the jurisdiction of this Court.  Therefore, for the

reasons set forth below, Defendant's motion to dismiss (Dkt. 6) is **GRANTED**, and

Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.

## I.  BACKGROUND

Plaintiff Apollo Petroleum Solutions, LLC is a Louisiana corporation,

organized under the laws of Louisiana, with a principal place of business in

Lafayette, Louisiana.  All of Apollo's members are citizens of Louisiana, thus it is a

citizen of Louisiana (Dkt. 3, First Amended Complaint, ¶ 1).  Plaintiff Clifton Roe is

an individual who resides in Harrison Township, Macomb County, Michigan, and is

a citizen of Michigan.  *Id.*¶ 2.  Defendant Flowback Solutionz Canada (0984767 BC

Ltd)(Flowback-Canada) is a Canadian corporation, organized and existing under

the laws of Canada, and having its principal place of business in Vancouver, British

Columbia, Canada.  *Id.* ¶ 3.  There is another "Flowback" entity, not a party to this

lawsuit, which claims to be a separate company but shares several key personnel

with Flowback-Canada.  That company is called Flowback Solutionz, LLC, a limited

liability company, organized under the laws of the State of Washington (hereafter,

"Flowback-USA").[1]  The record does not reflect the citizenship of Flowback-USA's

members, but that information is not required to resolve the motion before the

Court.

---

[1] As appropriate, the Court will distinguish the two Flowbacks by calling them "Flowback-USA" (not a party to this lawsuit), and "Flowback-Canada" (Defendant in this lawsuit).

On or about March 21, 2013 Plaintiff Roe and non-party Nano Gas Technologies, Inc.[2] ("Nano Gas") signed a joint venture agreement for the development and commercialization of gas infusion machines (Dkt. 8, Ex. D, Pg ID 111-114).  Nano Gas is a Delaware corporation with offices in Deerfield, Illinois.  Plaintiff Roe and Nano Gas established a joint laboratory in Clinton Township, Michigan in June 2013.

Plaintiff Roe states in his response to Defendant's motion to dismiss that, during this time-frame, he and Nano Gas were introduced to non-party OilTrap Environmental Products, Inc. and "Flowback"[3] (Dkt. 8, Pg ID 56).  Plaintiff avers that, beginning on or about June 26, 2014, James Warren, James Ward (employees and agents of Flowback – again, Plaintiff does not state *which* Flowback, USA or Canada) and Di Gao (consultant for Flowback) had telephone conferences and exchanged multiple emails with Plaintiff Roe, Len Bland and Jeff Hardin of Nano Gas regarding the gas infusion process.  Plaintiff attaches these emails to his response to Defendant's motion to dismiss (Dkt. 8, Ex. E).  It is clear from these

---

[2]  The Court notes that, although neither party saw fit to mention it in their briefing or during oral argument, Plaintiff Roe has brought two prior lawsuits against his former joint-venturer Nano Gas. On October 1, 2014, Roe sued Nano Gas in Civ. No.  14-13790, E.D. Mich., assigned to the Honorable Mark A. Goldsmith.  That case was dismissed on April 29, 2015 because the parties had agreed to binding arbitration (Civ. No.  14-13790, Dkt. 63, Pg ID 910). The record is devoid of any information as to the result of the arbitration proceedings, but in May of 2016, attorneys representing Nano Gas sent a cease and desist letter to Roe's current employer, Apollo Petroleum demanding that they stop using what they claimed to be Nano Gas's gas infusion technology (*See* Civ. No. 16-12157, Dkt. 1, Pg ID 11).  This letter prompted a second lawsuit by Roe against Nano Gas, filed the same day as the instant case, June 13, 2016, Civ. No. 16-12157, which was designated as a companion case to its predecessor (Civ. No. 14-13790), and assigned again to Judge Goldsmith.

[3] Plaintiff does not specify which Flowback he was "introduced to" – Flowback-USA or Flowback-Canada – but this lawsuit is only against Flowback-Canada.  Consequently, the Court must read Plaintiff's references to "Flowback" as denoting the Canadian corporate entity Defendant.  Unfortunately, the record is unambiguously clear that the entity Plaintiff Roe and Nano Gas were dealing with in 2014 was Flowback-USA *not* Flowback-Canada.

emails that Flowback-USA, Nano Gas, and OilTrap were discussing the possible use of Roe's gas infusion machine as part of a large project that Flowback-USA was undertaking with Apache Oil Corporation in Canada.  Plaintiff Roe is "cc'ed" on two of the emails (with an email address of croe@nanogastechnologies.com); he is not the primary sender or recipient on any of the attached emails.  The bulk of the emails consist of correspondence between Mike Davis (OilTrap), Len Bland (Nano Gas), and James (Jim) Warren (Flowback-USA).[4]  Included in these emails in the signature page from what Plaintiff contends is a non-disclosure agreement (Pg ID 140).  The signature page is signed by a Ty Hanna on behalf of Apache Oil Corporation (not a party to this lawsuit).  It has a signature block for James Warren on behalf of Flowback Solutionz, LLC (a/k/a Flowback-USA), but the copy provided to the Court by Plaintiffs has not been signed by Mr. Warren.

Plaintiffs provided two additional non-disclosure agreements (Pg IDs 148-153).  The first, between Nano Gas and Flowback-USA (identified as "Flowback Solutionz, LLC") is dated August 29, 2014.   The copy provided to the Court does not list an address for Flowback Solutionz, LLC, but that is the company name of Flowback-USA (not Flowback-Canada).  This non-disclosure agreement was not executed by Nano Gas; Mr. Di Gao ("Chair of Scientific Advisory Board") signed on behalf of Flowback-USA.  Plaintiff Roe states in an affidavit that this non-disclosure agreement arose in conjunction with an in-person meeting at Plaintiff Roe's lab in Michigan attended by James Warren (Flowback-USA), Chris Witworth (Flowback-

---

[4]  The earliest email from James Warren to Len Bland, et al., dated June 27, 2014, includes contact information for Flowback Solutionz, LLC, in Kirkland, Washington – Flowback-USA (Dkt. 8-6, Pg ID 116).

USA), Plaintiff Roe and Mike Davis (OilTrap) (Pg ID 69 ¶ 4).  At this meeting,

Plaintiff Roe claims that he demonstrated the gas infusion process to OilTrap and

Flowback.  Plaintiff Roe states that OilTrap and Flowback expressed interest in

using his technology in the oil fields in Canada.  *Id.* ¶ 5.  For his part, Mr. Warren

states that he never travelled to Michigan on behalf of Flowback-USA (Pg ID 169 ¶

4).  Mr. Warren admits, however, that Mr. Witworth (an employee of Flowback-

USA, not Flowback-Canada) and Mr. Di Gao (an "advisor" for Flowback-USA)

travelled to Michigan to meet with Nano Gas and Plaintiff Roe.

The second agreement was entered into about a week later, on September 8,

2014.  This agreement is between Nano Gas, and Flowback Solutionz, LLC (that is,

Flowback-USA).  In this agreement, Flowback is explicitly listed as a "Washington"

LLC (Pg ID 152).  Unlike the other two agreements, this agreement was fully

executed – Thomas DeDonato signed for Flowback-USA, and Len Bland signed for

Nano Gas.

Plaintiff Roe states that he terminated the joint-venture with Nano Gas on

September 15, 2014 (Pg ID 69 ¶ 6).  Plaintiff Roe claims that he then began working

directly with OilTrap in September 2014 to develop gas infusion machines, and he

shipped his existing gas infusion machine to OilTrap in Olympia, Washington for

research and development (Pg ID 70 ¶ 8).  Around this time, Plaintiff claims that he

received oil and water samples from Flowback for treatment and analysis.  Mr.

Warren states that Flowback sent these oil and water samples to OilTrap (in

Washington), and then OilTrap then forwarded them to Plaintiff in Michigan (Pg ID

170 ¶ 5).  Plaintiff claims to have analyzed these samples, and then shipped them "back to Flowback Canada."  *Id.* ¶ 8.  Plaintiff provided the Court with a "Water Sample Log" (Pg ID 154) that lists two samples for client "Flowback Solutionz" dated September 22, 2014.  The chart contains a column labeled "testing completed."  The first sample's "testing completed" column is left blank.  The second sample's "testing completed" column reads "testing completed by OilTrap."  *Id.*

Nearly a year then passes.  Plaintiff Roe does not explain what happened during the intervening year, but instead picks up his narrative of events on or about September 2, 2015 when, unbeknownst to him, OilTrap and Flowback-Canada entered into an agreement whereby OilTrap would sell and deliver to Flowback-Canada a gaseous infusion machine (Pg ID 155).  Under the purchase order between OilTrap and Flowback-Canada (explicitly identified in the purchase order as "Flowback Canada"), OilTrap was required to ship a gaseous infusion system from OilTrap in Tumwater, Washington to Flowback-Canada in Vancouver, British Columbia on November 3, 2015 (Pg ID 70 ¶ 9).  Plaintiff believes that OilTrap missed the November 3, 2015 deadline to deliver the agreed gaseous infusion system, and Flowback-Canada demanded to receive the agreed gaseous infusion system or a full refund.  *Id.* ¶ 10.  Plaintiff believes that, in order to try to meet its commitment to deliver a machine to Flowback-Canada, OilTrap then "loaned" Plaintiff's machine to Defendant, shipping it to at a facility in Grand Prairie, Alberta, Canada.  *Id.* ¶ 10-11.

To summarize, Plaintiff sent his machine to OilTrap, a company he was working with located in the State of Washington. OilTrap, without Plaintiff's knowledge or consent, shipped Plaintiff's machine to Flowback-Canada. Plaintiff is now suing Flowback-Canada to get his machine back. The question before the Court is whether this Canadian Defendant had sufficient contacts with Michigan to permit this Court to exercise jurisdiction over it.

According to Flowback-Canada, its only contact with Plaintiff relating to the gas infusion machine occurred in November 2015, when Plaintiff Roe participated in a conference call between James Ward, CEO of Defendant, and Dale Nelson, CEO of OilTrap. Defendant contends that Plaintiff Roe was presented as an employee of OilTrap during this call and Plaintiff Roe agreed in that telephone conversation to spare no effort in helping Flowback-Canada to get the machine working that Flowback-Canada had purchased from OilTrap.

## II.  ANALYSIS

### A.      *Motion to Dismiss for Lack of Personal Jurisdiction*

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff has the burden of proving jurisdiction over the defendant. *See Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002); *see also Children's Legal Services, PLLC v. Shor Levin and Derita, PC,* 850 F. Supp. 2d 673, 679 (E.D. Mich. 2012). In ruling upon a motion to dismiss for lack of personal jurisdiction, a district court has three procedural alternatives: "[it] may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

7

motion; or it may conduct an evidentiary hearing on the merits of the motion."
*Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).  In
this case, the Court will decide Defendant's motion on affidavits alone.

"[I]n the face of a properly supported motion for dismissal, the plaintiff may
not stand on his pleadings but must, by affidavit or otherwise, set forth specific
facts showing that the court has jurisdiction." *Children's Legal Servs.*, 850 F. Supp.
2d at 679 (citing *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)).  An
evidentiary hearing may be conducted "if the district court concludes that the
written submissions have raised issues of credibility or disputed issues of fact which
require resolution," in which case the plaintiff would be required to "show by a
preponderance of the evidence that jurisdiction exists." *American Greetings Corp. v.
Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988).  However, where the district court finds
no need for an evidentiary hearing, "the burden of the plaintiff is relatively slight,
and the plaintiff must make only a prima facie showing that personal jurisdiction
exists in order to defeat dismissal." *Children's Legal Servs.*, 850 F.Supp.2d at 679
(quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th
Cir. 2007) (internal quotations and citations omitted).

### B.    *Minimum Contacts and Purposeful Availment*

In a diversity case such as this one personal jurisdiction over a defendant is
proper only if it comports with the requirements of Michigan's long-arm statute and

federal constitutional due process.  *See Children's Legal Servs.*, 850 F. Supp. 2d at

679 (E.D. Mich. 2012); *see also* Mich. Comp. Laws § 600.715.  The Sixth Circuit has

held that "[w]here the state long-arm statute extends to the limits of the due

process clause, the two inquiries are merged and the court need only determine

whether exercising personal jurisdiction violates constitutional due process."

*Children's Legal Servs.*, 850 F. Supp. 2d at 679 (quoting *Bridgeport Music, Inc. v.*

*Still N The Water Publ'g,* 327 F.3d 472, 477 (6th Cir. 2003)).  "The Michigan

Supreme Court has construed Michigan's long-arm statute to bestow the broadest

possible grant of personal jurisdiction consistent with due process." *Audi AG and*

*Volkswagen of America, Inc. v. D'Amato*, 341 F. Supp. 2d 734, 741 (E.D. Mich. 2004).

In Michigan, personal jurisdiction over corporations may be general, *see*

Mich. Comp. Laws § 600.711, or specific (also known as "limited"), *see* Mich. Comp.

Laws § 600.715.  In response to Defendant's motions to dismiss, Plaintiffs concede

that there is no basis for the Court to exercise general personal jurisdiction over

Defendant, and argue only for specific, or limited, personal jurisdiction over

Defendant.  The exercise of limited personal jurisdiction over an out-of-state

defendant is proper where the defendant has "certain minimum contacts with [the

forum] such that maintenance of the suit does not offend 'traditional notions of fair

play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66

S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct.

339, 85 L.Ed. 278 (1940)); accord *Theunissen v. Matthews*, 935 F.2d 1454, 1459–61

(6th Cir. 1991).  Minimum-contacts are satisfied where a defendant has "purposely

avail[ed] itself of the privilege of conducting activities within the forum State."
*Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).
"'Purposeful availment,' the 'constitutional touchstone' of personal jurisdiction, is
present where the defendant's contacts with the forum state 'proximately result
from actions by the defendant himself that create a 'substantial connection' with the
forum State.'" *Neogen*, 282 F.3d at 889 (quoting *Burger King Corp. v. Rudzewicz*,
471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (emphasis omitted)).  The
defendant's conduct must be such that he should reasonably anticipate being haled
into court.  *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct.
559, 62 L.Ed.2d 490 (1980).

Under Michigan's long-arm statue, limited personal jurisdiction may be
extended over a corporation if it does any of the following:  (1) transacts any
business within the state; (2) commits acts to be done, or consequences to occur, in
the state resulting in an action for tort; (3) owns, uses, or possesses of any real or
tangible personal property situated within the state; (4) contracts to insure any
person, property, or risk located within this state at the time of contracting; or (5)
enters into a contract for services to be performed or for materials to be furnished in
the state.  *See* Mich. Comp. Laws § 600.715.  Plaintiffs must demonstrate that
Defendant had one of the contacts set forth in the statute and that the contact "is
directly and substantially related to the plaintiff's claim."  *Lafarge Corp. v. Altech
Env't, U.S.A.*, 220 F.Supp.2d 823, 828 (E.D. Mich. 2002).

Plaintiffs make no allegations that Flowback-Canada owned, used, or possessed property in Michigan; contracted to insure a property or person in Michigan; or entered into a contract for services to be rendered or for materials to be furnished in Michigan.  Plaintiffs focus instead on whether Flowback-Canada transacted business or committed acts resulting in a tort in Michigan.  Plaintiff's Complaint (Dkt. 3) contains three counts – (1) replevin; (2) conversion; and (3) unfair trade practices (misappropriation of trade secrets).

The facts adduced by Plaintiffs are not sufficient for this Court to exercise personal jurisdiction over Defendant.  As noted above, Plaintiff points to several alleged contacts with Michigan that Plaintiff contends establish personal jurisdiction over Flowback-Canada.  First, Plaintiff Roe produces a series of emails between representatives of Flowback-USA, OilTrap and Nano Gas.  Plaintiff Roe is "cc'ed" on two of these emails, but none of them show any direct communication to or from Plaintiff Roe.  At best, these emails show business dealings between Flowback-USA and Nano Gas, which is located in Illinois.  These emails are evidence of contacts with the forum by Flowback-USA, and therefore relate to whether there was purposeful availment by that entity.  However, they do not prove any business dealings by Flowback-Canada with Michigan.  Indeed, Plaintiff Roe's email address in these communications, croe@nanogastechnologies.com, suggests that he is acting on behalf of Nano Gas (again, located in Illinois) as opposed to writing from Michigan.  Furthermore, these emails occurred in the summer of 2014, more than a year before OilTrap allegedly sold Plaintiff's gas infusion machine to

11

Flowback-Canada in August 2015, and shipped it in November 2015.  The emails

relate to Nano Gas, OilTrap and Roe's attempts to negotiate a deal with Flowback-

USA to use the gas infusion machine in a project with Apache Oil in Canada in

2014.  They have no apparent connection with OilTrap's shipment of Plaintiff's

machine from Washington State to Flowback-Canada in Vancouver, Canada in

2015.  In sum, the emails produced by Plaintiff do not establish any minimum

contacts to or purposeful availment of this jurisdiction by Flowback-Canada.

Second, Plaintiff points to an in-person meeting in Michigan with

representatives of Flowback.  However, Plaintiff has not produced any evidence that

the meeting in Clinton Township, Michigan in September 2014 involved individuals

acting on behalf of Flowback-Canada.  Instead, the record shows that the parties

who came to Michigan were representing of Flowback-USA.  For example, the non-

disclosure agreements (Pg ID 148-153) were drafted for, and one of them executed

by, Flowback-USA.  The first one is signed on behalf of "Flowback Solutionz, LLC"

(Flowback USA).  The second non-disclosure agreement also explicitly indicates that

it is signed on behalf of Flowback-USA, a Washington Limited Liability Company.

The evidence regarding contacts with Michigan during 2014 relates to activities of

Flowback-USA, not of the Defendant, Flowback-Canada.  Plaintiff has therefore

failed to demonstrate sufficient evidence of contacts between Flowback-Canada and

this forum to subject the Canadian corporation to the jurisdiction of this Court.

Finally, Plaintiff points to the water and oil samples that he received from

Flowback-Canada.  However, Plaintiff has not established that these water and oil

samples were sent directly from Defendant to Plaintiff in Michigan.  Rather,

Defendant states (without dispute from Plaintiff) that it sent the water and oil

samples to OilTrap in Washington State, who then forwarded them to Plaintiff in

Michigan.  This is not evidence of a direct contact of business relationship between

Plaintiff and Defendant.

Plaintiff may well have a valid claim against Defendant[5] to recover

possession of his gas infusion machine.  He just cannot bring it in this Court.  Also,

if Plaintiff could show that Flowback-USA is the alter ego of Flowback-Canada, and

that Flowback-USA's contacts with Michigan should be lawfully imputed to

Flowback-Canada, then this might be a closer case, because the evidence shows that

during 2014 Flowback-USA was dealing with Nano Gas and Roe knowing that Roe

and his joint facility with Nano Gas was in Michigan.  But Plaintiff does not adduce

any evidence in support of, nor does he make, this argument.  Plaintiff has failed to

make a prima facie showing that this Court can exercise limited personal

jurisdiction over Defendant Flowback-Canada.  As such, Defendant's motion to

dismiss is well-taken, and must be granted.  Plaintiff's Complaint is therefore

dismissed, without prejudice to it being re-filed in a Court of proper jurisdiction.

### III.  CONCLUSION

---

[5]  Plaintiff's suit might also more logically lie against OilTrap, which according to the allegations shipped Plaintiff's machine to Flowback-Canada without Plaintiff's permission.  At oral argument Plaintiff acknowledged an active and positive business relationship with OilTrap which discouraged such litigation.  Such a position is understandable, but it does not create a basis of jurisdiction against Flowback-Canada in this Court.

For the reasons set forth above, Defendant's motions to dismiss for lack of personal jurisdiction (Dkt. 6) is **GRANTED**, and the Complaint is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: January 6, 2017

**Certificate of Service**

I hereby certify that this Order was electronically submitted on January 6, 2017, using the CM/ECF system, which will send notification to each party.

s/A. Chubb

Case Manager

14